[Crim. No. 4653.   Second Dist., Div. One.   Jan. 28, 1952.]

THE PEOPLE, Respondent, v. MANUEL FIGUEROA RODRIGUEZ, Defendant; AURORA GONZALES, Appellant.

E. J. Marks for Appellant.

Edmund G. Brown, Attorney General, and William E. James, Deputy Attorney General, for Respondent.

DORAN, J.—This is an appeal from the judgment and order denying a motion for a new trial.

The alleged offense was robbery and kidnapping.   Appellant Gonzales was found guilty of both counts.   The appeal of defendant Rodriguez was dismissed by this court on November 29, 1951, pursuant to the provisions of rule 17, Rules on Appeal.

The facts, as recited in respondent's brief are as follows:

"The prosecuting witness Roberto Godines, a construction

laborer from Brawley, California, was in Los Angeles on October 13, 1950 and the early morning of Saturday, October 14, 1950. In the early part of the morning October 14, 1950 Godines went to a place at 257 South Main Street, Los Angeles, known as the Tip Top Cafe. While he was seated in a booth in this cafe, Godines saw the appellant Aurora Gonzales and he asked her if she would accept a beer with him, and she said, 'No' but that instead they should go to another place and have a good time. Aurora Gonzales said that Godines should go with her and with the other woman, Gudelia Perez, and that they would go to see some girls. Roberto Godines accepted this invitation.

"As they started to leave the Tip Top Cafe an accident occurred outside on the street and the two women went down the street to see who had been hit by an automobile. They came back quickly and went to a car that was parked by the curb. This was a black Chevrolet coupe with a seat in the rear. The women called to Godines to get into the car. Godines got into the back seat where a Filipino man was already seated. Aurora Gonzales told Godines where to sit in the car. Aurora Gonzales then got into the driver's seat of the car, with the other girl in the middle of the front seat and the defendant Manuel Figueroa Rodriguez came in on the right-hand side of the front seat. Appellant Aurora Gonzales started the car and drove about two blocks south and then turned to the left and then went about four blocks and stopped at a gasoline station to make an inquiry. Aurora Gonzales then turned to the right and then they arrived at a parking place and Aurora Gonzales got out and went around the car and opened the door and Rodriguez also got out and Mrs. Gonzales told Godines to get out. The three of them then started to walk and they walked about 150 feet across a vacant place and turned to the left where there were some apartments and they then went down about five or six steps into a basement and the appellant Aurora Gonzales told Godines not to make any noise. Appellant Gonzales told Godines that they were going to wake up some girls.

"After they had gotten down into the basement they came to a hallway leading to some apartments; Aurora Gonzales was walking ahead and Rodriguez was behind the prosecuting witness Godines. Rodriguez then grabbed Godines from the back with his hand on his neck and with his right hand he hit Godines in the face. Godines was hit with the right fist and he began to bleed. Rodriguez continued to hit Godines and at

the same time was searching him and pulled out his wallet. When he found there was nothing in the wallet he hit Godines again and turned him over on the left side where he pulled out four twenty-dollar bills and some loose change. A watch was also taken from the victim at this time. Then the two, Rodriguez and Aurora Gonzales, left running. Godines was left lying on the floor bleeding from the nose and temple.

"Godines was able to get up and go to a gasoline station nearby and an ambulance came. He was treated at the scene and then two police officers arrived and took him in an automobile back to the bar located at 257 South Main. When they arrived at the bar, the two women, Aurora Gonzales and the Perez woman, and Rodriguez were standing outside. These three were then pointed out to the police officers by Godines. The defendants were handcuffed and taken into the car. The witness was positive as to his identification.

"Godines rode in the rear seat with one of the police officers in the middle and Rodriguez was on the right side of the rear seat. The two women rode in the front seat of the car. At the time that the prosecuting witness was picked up he had blood on his shirt. People's exhibit No. 2 was the watch which the prosecuting witness testified was worth $23 and which was stolen from him by the defendants.

.  .  .  .  .  .  .  .  .  .  .  .  .  .

"The officers told appellant Aurora Gonzales why she was under arrest and she made no response.

.  .  .  .  .  .  .  .  .  .  .  .  .  .

"Officer Reddish testified that the watch identified by the victim Godines was found by him in the extreme right-hand side of the rear seat of the police car which was used to take the defendants to the city hall and then to the jail; that it was behind the cushion."

It is contended on appeal in substance that the evidence is insufficient to support the judgment and that "an instruction given the jury was prejudicially erroneous."

Appellants' contention that the evidence is insufficient cannot be upheld. The law is well settled with regard to appeals in such circumstances. The effect of the evidence was for the jury to determine. And in that regard, as pointed out by respondent, "The intent and understanding of the criminal mind is rarely susceptible of direct proof, but the circumstances attending the perpetration of the crime and the reasonable inferences that may be drawn from them,

848

together with the action of the appellant after the crime, render the claim of insufficient proof to convict the appellant of the crimes charged in the information of no force and effect whatsoever. In fact, the actions of the appellant can hardly be reconciled with any claim of innocence. The reasonable inferences to be drawn from the evidence presented to the jury provides sufficient proof of the unity of action that existed between Rodriguez and the appellant.''

■ The instruction about which appellant complains relates to the definition of kidnapping. It is argued that, ''The effect of the instruction was to permit the jury to convict of a crime other than the one charged in the information.'' The contention is highly technical and without merit. As pointed out by respondent, ''The instruction was in the language of the penal code section and the information sufficiently informed appellant of the charge made against her.''

There being no prejudicial errors in the record, the judgment and order are affirmed.

Drapeau, J., concurred.

WHITE, P. J.—I concur. From a reading of the testimony adduced at the trial I am convinced that reasonable inferences to be drawn therefrom were sufficient to warrant the triers of fact in concluding that appellant Gonzales knowingly aided and abetted in the commission of the crimes charged (Pen. Code, § 31).

As to the instruction which it is claimed was prejudicially erroneous, I am satisfied that the information sufficiently informed appellant that she was charged in Count II with a violation of section 209 of the Penal Code, and that the instruction, given as it was in the language of the code section just cited, did not tend to either mislead or confuse the jury.

Furthermore, from an examination of the entire cause, including the evidence, I am of the opinion that the error, if any, complained of has not resulted in a miscarriage of justice (Cal. Const., Art. VI, § 4½).